1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ERIC JEROME PHILLIPS, JR.,

　　　　　Plaintiff,

　　v.

COUNTY OF RIVERSIDE et al.,

　　　　　Defendants.

Case No. 5:19-cv-01518-VAP (MAA)

**MEMORANDUM DECISION AND ORDER REGARDING SECOND AMENDED COMPLAINT**

## I.   INTRODUCTION

On August 14, 2019, Plaintiff Eric Jerome Phillips, Jr. ("Plaintiff"), a state inmate proceeding *pro se*, filed a Complaint alleging violations of his civil rights pursuant to  42 U.S.C. § 1983 ("Section 1983").  (Compl., ECF No. 1.)  That same day, Plaintiff also filed a Request to Proceed *In Forma Pauperis* (ECF No. 2), which the Court granted on August 15, 2019 (ECF No. 4).

On August 20, 2019, the Court dismissed the Complaint for failure to comply with Federal Rule of Civil Procedure 8 ("Rule 8"), with leave to amend.  (ECF No. 7.)  On September 23, 2019, Plaintiff submitted a First Amended Complaint ("FAC").  (FAC, ECF No. 8.)

1    On November 15, 2019, Plaintiff submitted a Request to Submit Second
2    Amended Complaint ("SAC").  (ECF No. 9.)  The Court denied this request as
3    unnecessary due to Federal Rule of Civil Procedure 15 and ordered Plaintiff to file a
4    SAC no later than December 23, 2019.  (ECF No. 10).  On December 4, 2019,
5    Plaintiff filed a Motion to Submit Supplemental Complaint (ECF No. 12), which the
6    Court also denied as unnecessary (ECF No. 13).

7    On December 23, 2019, Plaintiff filed a letter to the Clerk of Court requesting
8    the Court's assistance.  (ECF No. 14.)  On January 9, 2020, the Court issued a notice
9    to the warden and extended Plaintiff's SAC deadline to February 10, 2020.  (ECF
10   No. 16.)

11   On February 25, 2020, the Court issued an order requiring Plaintiff to show
12   cause by March 26, 2020 why the Court should not recommend that the case be
13   dismissed for want of prosecution ("OSC").  (OSC, ECF No. 27.)  On March 25,
14   2020, Plaintiff submitted a response to the OSC, stating, *inter alia*, that Plaintiff
15   believed a SAC was optional.  (ECF No. 33.)  On March 30, 2020, the Court
16   discharged the OSC and deemed the FAC as the operative complaint.  (ECF No. 34.)

17   On April 2, 2020, the Court dismissed Plaintiff's FAC (ECF No. 8) for failure
18   to comply with Rule 8, with leave to amend.  (ECF No. 35.)

19   On April 2, 2020, the Court received a complaint, which was docketed as a
20   SAC.  (ECF No. 38.)  On April 16, 2020, the Court dismissed the SAC with leave to
21   amend.  (ECF No. 42.)  The Court subsequently received Plaintiff's Motion/Request
22   to Submit a SAC, which stated that Plaintiff had not yet filed a SAC in this lawsuit,
23   and Plaintiff's recent complaint was intended as a separate class action lawsuit.
24   (ECF No. 43.)  On April 20, 2020, the Court ordered ECF Nos. 38 and 42 stricken
25   from the docket and ordered Plaintiff to file a SAC no later than June 19, 2020.
26   (ECF No. 44.)

27   Plaintiff filed a SAC on June 8, 2020.  (SAC, ECF No. 48.)  The Court has
28   screened the SAC as prescribed by 28 U.S.C. § 1915A and § 1915(e)(2)(B).  For the

2

1  reasons stated below, the SAC is **DISMISSED WITH LEAVE TO AMEND**.

2  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either:

3  (1) file a Third Amended Complaint ("TAC"); or (2) advise the Court that Plaintiff

4  does not intend to pursue this lawsuit further and will not file a TAC.

5

6  ## II.    SUMMARY OF ALLEGATIONS AND CLAIMS[1]

7        The SAC is filed against:  (1) Riverside County (official capacity);

8  (2) Riverside County Sheriff's Department ("RCSD") (official capacity); (3) Sheriff

9  Chad Bianco, Sheriff for Riverside County (individual capacity); (4) Stanley Sniff,

10 ex-Sheriff for Riverside County (individual capacity); (5) Sergeant Narcisco,

11 Transportation Sergeant at "CBDC Jail" (presumably, Cois M. Byrd Detention

12 Center) (individual capacity); and (6) Sergeant Hill, Classification Sergeant at

13 "RPDC Jail" (presumably, Robert Presley Detention Center) (individual capacity)

14 (each, a "Defendant," and collectively, "Defendants").  (SAC, at 4–5.)[2]

15        The SAC is grouped into two categories of allegations and claims:  Claims 1–

16 3 (*id*., at 6–14) and Claim 4 (*id*., at 15–41).

17

18     ### A.    Claims 1–3 (Defendants Riverside County, RCSD, Bianco, Sniff)

19        Claims 1–3 asserts violations of the following rights:  (1) Claim 1: First

20 Amendment Free Exercise Clause; (2) Claim 2: Fourteenth Amendment Equal

21 Protection Clause; and (3) Claim 3: Religious Land Use and Institutionalized

22 Persons Act ("RLUIPA").  (*Id*., at 6.)

23 ///

24

25 [1] The Court summarizes the allegations and claims in the SAC.  In doing so, the
26 Court does not opine on the veracity or merit of Plaintiff's allegations and claims,
   nor does the Court make any findings of fact.

27 [2] Pinpoint citations of docketed documents refer to the page numbers in the ECF-
28 generated headers.

1        Practices and policies throughout Defendant RCSD's jail facilities—which

2  have been in practice since Plaintiff entered Defendant RCSD's custody on July 13,

3  2016—prohibit Plaintiff from exercising his Islamic religion:  (1) Muslim detainees

4  are not allowed to congregate together, (2) Muslim detainees are not permitted to

5  receive religious materials, (3) Muslim detainees must pass a series of tests and

6  inquiries to receive an Arabic Quran, and (4) it is not the responsibility of

7  Defendants RCSD and Riverside County to provide congregation services with an

8  Islamic religious advisor.  (*Id.*, at 6–7.)  Since the time Plaintiff has been in the

9  custody Defendants RCSD and Riverside County, Plaintiff has submitted multiple

10  requests, slips, and grievances—and spoken to multiple deputies—regarding his

11  needs for the following religious items and services:  (1) khuffi, (2) sunnah,

12  (3) hadith, (4) Islamic prayer rug, (5) Arabic Quaran, (6) congregate with other

13  Muslims, and (7) congregate with an Islamic advisor once a week.  (*Id.*, at 7–8.)

14  Such requests were denied pursuant to the policies and practices of Defendants

15  Riverside County and RCSD because they either posed a security risk and threat,

16  were "too much work," such items were not available, or Defendants Riverside

17  County and RCSD did not "have the ability" to satisfy the request.  (*Id.*, at 8.)

18  Plaintiff's request for a Quaran was denied because he refused to submit to an

19  investigation of his faith.  (*Id.*)  In lieu of a prayer rug, on multiple occasions

20  Defendants Riverside County and RCSD provided Plaintiff a used towel covered in

21  feces, urine, and blood.  (*Id.*, at 11.)  On February 1, 2019; June 1, 2019; and

22  February 25, 2020 Defendants Riverside County and RCSD confiscated Plaintiff's

23  Islamic reading materials because they were deemed a security threat and pursuant

24  to a policy that limited detainees to possessing only one religious book.  (*Id.*, at 11–

25  12.)

26        Defendants Riverside County and RCSD provide Christian and Catholic

27  detainees:  (1) religious and advisor congregation services approximately one to

28  three times per month, and (2) the Bible and other religious reading materials when

requested without any inquiries or unwarranted burdens.  (*Id.*, at 10–11.)
Defendants Riverside County and RCSD provide Jewish detainees religious
materials in Yiddish.  (*Id.*, at 11.)

These policies and practices were reviewed, approved, and enforced by
Defendants Bianco and Sniff, who trained their subordinates in them.  (*Id.*, at 6, 9.)
the sole purpose of these policies and practices is to deter Muslims from practicing
Islam.  (*Id.*, at 12.)

## B.    Claim 4 (All Defendants)

Claim 4 concerns the totality of jail conditions that Plaintiff asserts constitute
punishment in violation of his Fourteenth Amendment substantive due process
rights.  (*Id.*, at 15.)  Specifically, Plaintiff challenges the following customs:
(1) confiscation of legal property, (2) forcing detainees to strip naked, (3) excessive
force, (4) denial of access to a law library, (5) denial of access to USB flash drives,
and (6) denial of access to a phone.  (*Id.*, at 17.)  These policies and practices—
which have been in place since Plaintiff entered Defendant RCSD's custody on July
13, 2016—were written by,  "set in motion," and approved by Defendants Sniff and
Bianco, who trained all subordinates, and have become the customs of Defendants
RCSD and Riverside County.  (*Id.*, at 15–16.)

Confiscation of Legal Property.  All detainees are allowed to keep extra
property boxes on them, and propia persona detainees are allowed to keep one
property box for legal property.  (*Id.*, at 17.)  Deputies confiscate and throw away
legal documents and materials for fun when detainees are transferred into the
custody of Defendant RCSD from another entity.  (*Id.*)

On August 26, 2018, while Plaintiff was at the laundry exchange, Defendant
Narcisco and his partner Sergeant Gell read through Plaintiff's legal papers and
threw away his legal news publications, legal research, and notes.  (*Id.*, at 18–20.)

As a result, Plaintiff was prevented from filing a writ of habeas corpus and writ of prohibition in the California court of appeals and assert claims of prosecution misconduct and due process violations, and was prevented from filing a Pitchess motion and assert claims of perjury and fabrication of evidence.  (*Id*., at 20.)

On February 1, 2019, Defendant Hill and his two subordinates gave Plaintiff twenty minutes to pick a small amount of legal documents to keep, and confiscated the remainder of Plaintiff's legal documents and materials, including writing paper and pencils; envelopes; stamps; criminal case research notes, evidence, motions, transcripts, court minutes, court orders; declarations of witnesses; and law books. (*Id*., at 21.)  This event caused Plaintiff to miss a filing deadline for a writ of mandate in the California Court of Appeals, and also a motion for expert witnesses to conduct investigations in his case and assist him in the preparation of his defense at trial.  (*Id*., at 23.)

On February 19, 2020, Plaintiff returned to the custody of Defendants RCSD and Riverside County from Paton State Hospital.  (*Id*., at 24.)  Upon being housed, Defendants RCSD and Riverside County confiscated from Plaintiff law dictionaries, legal research notes, $40 of stamps, documents regarding Plaintiff's criminal and civil case, and a list of attorneys.  (*Id*.)  Plaintiff has attempted to retrieve these items daily since February 23, 2020 through inmate request slips, talking with housing unit deputies, and submitting grievances that were never answered.  (*Id*.)  As a result, Plaintiff was prevented from contacting an attorney to represent him and a class of detainees in a class action lawsuit asserting First Amendment and due process violations.  (*Id*.)  Plaintiff also was prevented from effectively preparing a federal writ of habeas corpus and asserting claims of Brady violations, fabrication of evidence, Faretta right violations, and First Amendment violations.  (*Id*., at 25.)

Strip Searches.  Detainees are required to strip naked in the following circumstances:  (1) when detainees are booked into jail, deputies may "pick and

6

choose" which detainee is placed into a safety cell and must strip naked; if an inmate refuses, he is stripped forcefully (*id*.); (2) during random cell searches (*id*., at 26); and (3) at CBDC Jail, detainees must strip naked once a week in front of approximately thirty-two detainees to obtain clean underwear (*id*., at 26, 31).

On July 13, 2016 and July 25, 2017, Plaintiff was forced to strip naked and "play with his sexual organs" while Defendants Riverside County and RCSD made sexual comments towards Plaintiff. (*Id*., at 26–27.)

On January 18 and 25, 2019, Plaintiff was placed into a safety cell for two and half days and ordered to strip naked by Defendants RCSD and Riverside County. (*Id*., at 28.)  Each time, Plaintiff was forced to lay on fecal particles, fresh feces, urine, and vomit in the safety cells.  (*Id*.)  Plaintiff was deprived of sleep while in the safety cell due to excessive lighting, cold temperatures, and the smells of feces and urine.  (*Id*.)  Defendants RCSD and Riverside County would come by the safety cell frequently to taunt and humiliate Plaintiff.  (*Id*.)  Defendants RCSD and Riverside County had Plaintiff recorded the entire time he was in the safety cell for the purpose of watching Plaintiff urinate and defecate and to record his nakedness and further humiliate and taunt him.  (*Id*., at 29.)  As a result, Plaintiff was scarred psychologically.  (*Id*.)

On February 14, 2019, Defendants RCSD and Riverside County ordered Plaintiff to strip naked before going to court to make sure he was not hiding any weapons.  (*Id*.)  When Plaintiff asked to use the restroom, Defendants stood next to Plaintiff and watched him defecate.  (*Id*.)

On February 19, 2020, Plaintiff was placed into a safety cell and forced to strip naked.  (*Id*., at 30.)  Plaintiff remained in the safety cell for two days, where he was deprived of sleep the entire time due to excessive lighting, cold temperatures, and smells of fresh feces and urine.  (*Id*.)  Female deputies employed by Defendants RCSD and Riverside County monitored Plaintiff and taunted him.  (*Id*.)  Plaintiff was recorded the entire time to humiliate him.  (*Id*., at 30–31.)

7

1    Excessive Force.  When extracting detainees from a cell or dayroom, riot

2    weapons are used to subdue a detainee and deputies may use as much force as

3    necessary as all detainees are considered highly dangerous.  (*Id.*, at 32.)

4        On May 15, 2019, Defendants RCSD and Riverside County ordered Plaintiff

5    to be transferred from the mental health/segregation unit at RPDC Jail to general

6    population housing.  (*Id.*)  When Plaintiff refused, Defendants RCSD and Riverside

7    County "proceeded to gear up in riot gear" and extracted Plaintiff from his cell.  (*Id.*)

8    Defendants RCSD and Riverside County had twelve deputies in riot gear throw two

9    military grade canisters of tear gas into Plaintiff's cell for approximately two

10   minutes each.  (*Id.*, at 32–33.)  Deputies then threw in three "concusion" grenades

11   into Plaintiff's cell, and two exploded.  (*Id.*, at 33.)  Nine deputies entered Plaintiff's

12   cell, shoved a riot shield on top of him, and punched him repeatedly for

13   approximately thirty seconds before throwing him on the ground to cuff his hands

14   and feet.  (*Id.*)  Plaintiff was picked up, carried for three minutes, and thrown into a

15   safety cell for two days, then returned back to the same housing unit.  (*Id.*)  Plaintiff

16   had a swollen left eye, two blood vessels in his exploded for three weeks, a fractured

17   toe, both legs swollen for three months, and wrists and ankles cut.  (*Id.*)  Due to this

18   event, Plaintiff is unable to control his bladder and urinates on himself frequently,

19   and suffers from nightmares and difficulty sleeping.  (*Id.*, at 33–34.)  Two weeks

20   before this event, Plaintiff had told Defendants RCSD and Riverside County that he

21   had a court order from the Superior Court of Riverside County to remain in the

22   mental health unit.  (*Id.*)

23

24   Denial of Access to Law Library.  At all jail facilities, the custom is that

25   propia persona detainees are allowed access to a law library once a week for only

26   four hours.  (*Id.*, at 35.)  Deputies may allow access to the law library at their

27   discretion.  (*Id.*)  At all jail facilities, only the classification unit is responsible for

28   law library access, and such access is offered only when detainees are asleep.  (*Id.*)

8

Defendants RCSD and Riverside County deliberately denied Plaintiff access to the law library and impaired his criminal case. (*Id*., at 35–36.) On August 28, 2018, at CBDC Jail, Defendants RCSD and Riverside County told Plaintiff that they would make sure he would not get access to the law library except for one hour the day of court so he would fail in his case. (*Id*., at 36.) On September 20, 2018, at CBDC Jail, Defendants RCSD and Riverside County told Plaintiff that they offer him access to the law library in the early morning because they know he would be asleep and would not be able to access it later. (*Id*.)

From September 1, 2018 through December 2, 2018, Plaintiff requested to use the law library sixty times at CBDC Jail and was denied fifty-eight times. (*Id*.) Defendants RCSD and Riverside County denied Plaintiff access at this time and deliberately offered Plaintiff access to a law library on his cell intercom between the hours of 3 a.m. to 5 a.m. (*Id*.)

Plaintiff was acting in propia persona in a criminal case during this period. Due to Defendants RCSD and Riverside County's denial of access to the law library, Plaintiff was prevented from presenting and asserting claims of fabrication of evidence, willful use of perjury, and law enforcement misconduct, and also was prevented from incorporating legal authorities into a common law dismissal motion and writ for habeas corpus on the grounds of prosecutorial misconduct. (*Id*., at 37.)

Denial of Access to USB Flash Drives.  Propia persona detainees are offered to use USB flash drives approximately once a week with the law library kiosk for approximately two to four hours. (*Id*., at 38.)  Only the classification unit may access USB flash drives for detainees at each jail facility. (*Id*.)  Deputies may confiscate USB flash drives at their discretion. (*Id*.)  These customs affect Plaintiff's ability to represent himself. (*Id*., at 39.)

For Plaintiff, USB flash drives contain discovery, work product, books, and motions. (*Id*., at 38.)  On seven occasions, Plaintiff's investigators attempted to pick

1    up USB flash drives to upload critical discovery and work product for Plaintiff to

2    conduct his criminal defense, and were denied because:  (1) the classification unit

3    was unavailable; (2) the jail facility was too busy; and (3) the USB flash drives

4    could not be located.  (*Id*., at 39.)  On February 1, 2019 to March 7, 2019, Plaintiff's

5    USB flash drives were lost twice.  (*Id*.)  If Plaintiff is using a USB flash drive and

6    the classification unit leaves, then the USB flash drive is confiscated.  (*Id*.)

7

8        <u>Denial of Access to Telephone</u>.  At every jail facility, phones are divided by

9    racial group, and are not activated until all detainees are fully dressed in dayrooms.

10   (Id., at 39–40.)  Detainees are punished for the actions of other detainees by deputies

11   cutting off phones or denying detainees access to the day room.  (*Id*., at 40.)

12   Detainees are allowed one to three hours a day to compete against each other for

13   access to a phone.  (*Id*.)

14        When Plaintiff was a pro per in his criminal case from September 1, 2016 to

15   April 2, 2019, he was prevented from making the necessary calls on time to conduct

16   investigations to prepare witnesses, research claims, and overall prepare an effective

17   defense.  (*Id*.)  Plaintiff received multiple court orders to access a phone to conduct

18   his criminal case which Defendants RCSD and Riverside County refused to respect.

19   (*Id*.)

20

21        **C.    Request for Relief**

22        For the foregoing violations, Plaintiff requests:

23        (1)    Declaratory relief declaring the First and Fourteenth Amendment rights

24               of Plaintiff against Defendant RCSD;

25        (2)    Permanent injunctions against Defendants Riverside County and RCSD

26               as follows:

27               (a)    directing Defendants to provide to Plaintiff:  (i) hadith,

28                      (ii) sunnah, (iii) kufi, (iv) Islamic prayer rug, (v) Arabic and

10

1    English versions of the Quran, and (vi) congregation service with

2    an imam once a month;

3        (b)    directing Defendants to provide to Plaintiff:  (i) a laptop with

4    Lexis Nexis program five days a week for five hours each day,

5    (ii) ability to carry USB flash drives, (iii) access to carry all

6    property needed to conduct cases, (iv) access to a phone five days

7    a week for three hours each day when needed;

8        (c)    ordering Defendant RCSD to cease:  (i) unnecessary

9    confiscations, (ii) bodily searches, and (iii) forcing Plaintiff to

10   strip naked;

11       (3)    Damages in the following amounts:  (a) $750,000 in punitive and

12   nominal damages from Defendants Riverside County and RCSD; and

13   (b) $750,000 in punitive and compensatory damages from all

14   Defendants jointly and severally;

15       (4)    A jury trial; and

16       (5)    Any further relief in the interests of justice.

17   (*Id*., at 42.)

18

19   **III.    STANDARD OF REVIEW**

20       Federal courts must conduct a preliminary screening of any case in which a

21   prisoner seeks redress from a governmental entity or officer or employee of a

22   governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma*

23   *pauperis* (28 U.S.C. § Section 1915(e)(2)(B)).  The court must identify cognizable

24   claims and dismiss any complaint, or any portion thereof, that is:  (1) frivolous or

25   malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks

26   monetary relief from a defendant who is immune from such relief.  28 U.S.C.

27   §§ 1915(e)(2)(B), 1915A(b).

28   ///

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)).  To survive a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although "detailed factual allegations" are not required, "an unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to defeat a motion to dismiss.  *Id.* (quotations omitted).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Hartmann v.  Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff.  *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).  Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt.  *Wilhelm*, 680 F.3d at 1121.  "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint

12

1    survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202,

2    1216 (9th Cir. 2011).  However, the liberal pleading standard "applies only to a

3    plaintiff's factual allegations."  *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989),

4    *superseded by statute on other grounds*, 28 U.S.C. § 1915.  Courts will not "accept

5    any unreasonable inferences or assume the truth of legal conclusions cast in the

6    form of factual allegations."  *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir.

7    2003).  In giving liberal interpretations to complaints, courts "may not supply

8    essential elements of the claim that were not initially pled."  *Chapman v. Pier 1*

9    *Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976

10   F.2d 469, 471 (9th Cir. 1992)).

11

12   **IV.    DISCUSSION**

13        **A.    Section 1983**

14        Section 1983 provides a cause of action against "every person who, under

15   color of any statute . . . of any State . . . subjects, or causes to be subjected, any

16   citizen . . . to the deprivation of any rights, privileges, or immunities secured by the

17   Constitution and laws . . . ."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in

18   original) (quoting 42 U.S.C. § 1983).  "The purpose of § 1983 is to deter state

19   actors from using the badge of their authority to deprive individuals of their

20   federally guaranteed rights and to provide relief to victims if such deterrence fails."

21   *Wyatt*, 504 U.S. at 161.  To state a claim under Section 1983, a plaintiff must allege:

22   (1) a right secured by the Constitution or laws of the United States was violated;

23   and (2) the alleged violation was committed by a person acting under color of state

24   law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

25        Here, the SAC asserts violations of the following rights:  (1) First Amendment

26   Free Exercise Clause; (2) Fourteenth Amendment Equal Protection Clause;

27   (3) RLUIPA; and (4) Fourteenth Amendment substantive due process protection

28   against punishment of pretrial detainees.  (SAC, at 6, 15.)  Mindful of the liberal

pleading standards afforded *pro se* civil rights plaintiffs, the Court also examines the allegations in light of the following additional rights:  (a) Fourteenth Amendment right to privacy, and (b) First and Fourteenth Amendment right to access courts.  *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss."); *Ellis v. Brady*, Case No. 16cv1419 WQH (NLS), 2017 U.S. Dist. LEXIS 203458, at *15–16 (S.D. Cal. Dec. 8, 2017) (concluding that court could address plaintiff's claim asserted under the wrong constitutional amendment, as "it is the factual allegations, not the legal labels attached, which determine the issue").

### B.    Defendants Sniff and Bianco

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* liability." *Iqbal*, 556 U.S. at 676.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*.  "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr*, 652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.'" *Starr*, 652 F.3d at 1207–08 (alterations in original) (citation omitted).  "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional

1   deprivation; or for conduct that showed a reckless or callous indifference to the

2   rights of others.'"  *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (alteration

3   in original) (quoting *Starr*, 652 F.3d at 1208).  "'Therefore, the claim that a

4   supervisory official knew of unconstitutional conditions and 'culpable actions of his

5   subordinates' but failed to act amounts to 'acquiescence in the unconstitutional

6   conduct of his subordinates' and is 'sufficient to state a claim of supervisory

7   liability.'"  *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208).

8        Here, Defendants Bianco and Sniff cannot be liable simply based upon their

9   position as Sheriff of Riverside County.  *See Davis v. Arpaio*, No. CV 05-3352-

10  PHX-NVW (BPV), 2005 U.S. Dist. LEXIS 28594, at *4 (D. Ariz. Nov. 9, 2005)

11  (Sheriff "cannot be liable simply based upon his position.").  The SAC does not set

12  forth sufficient factual allegations that Defendants Bianco and Sniff were directly

13  involved in any allegedly unconstitutional conduct or had any knowledge of the

14  alleged deprivations and acquiesced in them.  *See Keates*, 883 F.3d at 1243.  Rather,

15  the SAC contains only conclusory allegations that Defendants Bianco and Sniff

16  reviewed, approved, enforced, and trained their subordinates on the policies and

17  practices regarding the alleged religious violations (SAC, at 6, 9), and wrote, "set in

18  motion," approved, and trained their subordinates on the policies asserted in Claim 4

19  (*Id*., at 15–16).  These conclusory allegations are "unadorned," "naked assertions"

20  and "labels and conclusions" that lack any specific factual allegations, and are not

21  sufficient to state any cognizable claims against Defendants Bianco and Sniff.  *See*

22  *Iqbal*, 556 U.S. at 678; *see also, e.g., Mendez v. Becher*, No. C-12-4170 EMC, 2013

23  U.S. Dist. LEXIS 15600, at *1–2 (N.D. Cal. Feb. 5, 2013) (dismissing claims

24  against police chief because plaintiff failed to "make any specific allegations about

25  how Chief Becher's conduct resulted in plaintiff's constitutional deprivation, beyond

26  conclusory statements regarding her approving, ratifying, condoning, encouraging,

27  or tacitly authorizing a pattern and practice of misconduct").

28  ///

1    For these reasons, the SAC fails to state any claims against Defendants

2  Bianco and Sniff.  If Plaintiff includes claims against Defendants Bianco and Sniff

3  in an amended complaint, he must correct these deficiencies or risk their dismissal.

4

5    **C.    Defendants RCSD and Riverside County**

6    With respect to Plaintiff's claims against Defendants RCSD and Riverside

7  County, Plaintiff must allege the Riverside County policy, regulation, custom, or

8  usage that caused the Constitutional violation.  A local government entity "cannot

9  be held liable *solely* because it employs a tortfeasor—or in other words, a [local

10  government entity] cannot be held liable under Section 1983 on a *respondeat*

11  *superior* theory."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978).

12  Instead, a local government entity is liable in a Section 1983 action only if the

13  plaintiff's "injury was inflicted pursuant to the local government's policy,

14  regulation, custom, or usage."  *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994)

15  (citing *Monell*, 436 U.S. at 690–91).  There must be a "direct causal link between a

16  municipal policy or custom and the alleged constitutional deprivation."  *City of*

17  *Canton v. Harris*, 489 U.S. 378, 385 (1989).  Local government policy "'causes' an

18  injury where it is the 'moving force' behind the constitutional violation, or where

19  'the [local government] itself is the wrongdoer.'"  *Chew*, 27 F.3d at 1444 (citations

20  omitted).  The local government policy "need only cause a constitutional violation;

21  it need not be unconstitutional per se."  *Jackson v. Gates*, 975 F.2d 648, 654 (9th

22  Cir. 1992).  Below the Court examines whether the SAC successfully states claims

23  against Defendants RCSD and Riverside County.

24

25    **D.    First Amendment Free Exercise Clause**

26    The First Amendment prohibits the government from making laws

27  "prohibiting the free exercise" of religion.  U.S. Const. amend. I; *Hartmann*, 707

28  F.3d at 1122 (noting that the free exercise guarantee is applicable to state action

16

through the Fourteenth Amendment).  "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted).

A religious belief must satisfy two criteria to merit protection under the Free Exercise Clause of the First Amendment:  (1) "the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity"; and (2) "the claim must be rooted in religious belief, not in purely secular philosophical concerns."  *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (internal quotation marks and citations omitted).  In addition, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion."  *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).  "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs."  *Id.* (alteration in original) (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).

"[A] prisoner's Free Exercise Clause claim will fail if the State shows that the challenged action is 'reasonably related to legitimate penological interests.'"  *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  Four factors are balanced in determining whether an action is reasonably related to legitimate penological interests:

> (1) whether there is a valid, rational connection between a state interest and the prison regulation; (2) whether prisoners have an alternative method of engaging in religious practice; (3) the impact accommodation of the asserted constitutional right would have on

1    guards and other inmates; and (4) the absence of ready alternatives to

2    the challenged regulation.

3  *Walker*, 789 F.3d at 1138–39 (citing *Turner*, 482 U.S. at 89–90).

4         The SAC alleges that Defendants Riverside County and RCSD have practices

5  that hinder and discourage Plaintiff from practicing his Islamic religion, including

6  denial of Plaintiff's requests for five Islamic religious items (kufi, Islamic prayer

7  rug, Arabic translated Quran, hadith, and sunnah); confiscation of Plaintiff's Islamic

8  reading materials; denial of Plaintiff's requests for congregation services; and

9  denial of Plaintiff's requests to meet with an Islamic advisor.  (SAC, at 7–8.)  These

10  allegations potentially state a First Amendment free exercise claim against

11  Defendants RCSD and Riverside County.

12

13       **E.    Fourteenth Amendment Equal Protection Clause**

14         "The Equal Protection Clause of the Fourteenth Amendment provides that

15  '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of

16  the laws.'"  *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015)

17  (alteration in original) (quoting U.S. Const. amend. XIV, § 1).  "The Equal

18  Protection Clause requires the State to treat all similarly situated people equally."

19  *Hartmann*, 707 F.3d at 1123.  "The Equal Protection Clause does not forbid

20  classifications.  It simply keeps governmental decisionmakers from treating

21  differently persons who are in all relevant respects alike."  *Nordlinger v. Hahn*, 505

22  U.S. 1, 10 (1992).

23         "The Constitution's equal protection guarantee ensures that prison officials

24  cannot discriminate against particular religions."  *Freeman v. Arpaio*, 125 F.3d 732,

25  737 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878,

26  884–85 (9th Cir. 2008).  "[T]he Equal Protection Clause entitles each prisoner to 'a

27  reasonable opportunity of pursuing his faith comparable to the opportunity afforded

28  ///

1    fellow prisoners who adhere to conventional religious precepts.'" *Shakur*, 514 F.3d
2    at 891 (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)).

3         A plaintiff states an equal protection claim by alleging "facts plausibly
4    showing that 'the defendants acted with an intent or purpose to discriminate against
5    [them] based upon membership in a protected class." *Hartmann*, 707 F.3d at 1123
6    (alteration in original) (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166
7    (9th Cir. 2005)).  "To succeed on an equal protection claim, a plaintiff in a section
8    1983 claim must show that officials intentionally acted in a discriminatory manner."
9    *Freeman*, 125 F.3d at 737.  As with First Amendment free exercise claims, courts
10   apply the *Turner* four-factor reasonableness test—that is, Plaintiff's Fourteenth
11   Amendment equal protection claim will fail if the challenged action is reasonably
12   related to legitimate penological interests.  *See Shakur*, 514 F.3d at 891.

13        The SAC alleges that Defendants Riverside County and RCSD have practices
14   that hinder and discourage Plaintiff from practicing his Islamic religion, including
15   denial of Plaintiff's requests for five Islamic religious items (kufi, Islamic prayer
16   rug, Arabic translated Quran, hadith, and sunnah); confiscation of Plaintiff's Islamic
17   reading materials; denial of Plaintiff's requests for congregation services; and denial
18   of Plaintiff's requests to meet with an Islamic advisor.  (SAC, at 7–8.)  The SAC
19   alleges that in contrast to Muslim detainees, Christian and Catholic detainees receive
20   religious and advisor congregation services approximately one to three times per
21   month, and the Bible and other religious reading materials when requested without
22   any inquiries or unwarranted burdens (*id*., at 10–11) and Jewish detainees are
23   provided religious materials in Yiddish (*id*., at 11).  These allegations potentially
24   state a Fourteenth Amendment equal protection claim against Defendants RCSD and
25   Riverside County.

26   ///
27   ///
28   ///

19

1    **F.    RLUIPA**

2           "RLUIPA . . . protects institutionalized persons who are unable freely to

3    attend to their religious needs and are therefore dependent on the government's

4    permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*,

5    544 U.S. 709, 721 (2005).  RLUIPA provides that: "No government shall impose a

6    substantial burden on the religious exercise of a person residing in or confined to an

7    institution, . . . even if the burden results from a rule of general applicability, unless

8    the government demonstrates that imposition of the burden on that person,' first,

9    'furthers a compelling governmental interest,' and second, 'is the least restrictive

10   means of furthering that compelling governmental interest.'" *Id*. at 732 (alteration in

11   original) (quoting 42 U.S.C. § 2000cc-1(a)(1)–(2)).  RLUIPA provides more

12   "expansive protection" for inmates' "religious liberty" than the First Amendment.

13   *Holt v. Hobbs*, 574 U.S. 352, 358 (2015); *Shakur*, 514 F.3d at 888 (RLUIPA

14   "mandates a stricter standard of review for prison regulations that burden the free

15   exercise of religion than the reasonableness standard under *Turner*.").

16          "To state a claim under RLUIPA, a prisoner must show that:  (1) he takes part

17   in a religious exercise, and (2) the State's actions have substantially burdened that

18   exercise." *Walker*, 789 F.3d at 1134 (internal quotations omitted).  "RLUIPA

19   protects any exercise of religion, whether or not compelled by, or central to, a

20   system of religious belief, but, of course, a prisoner's request for an accommodation

21   must be sincerely based on a religious belief and not some other motivation." *Holt*,

22   574 U.S. at 360–61 (internal quotations and citations omitted).  "To constitute a

23   substantial burden, a limitation of religious practice 'must impose a significantly

24   great restriction or onus upon such exercise.'" *Walker*, 789 F.3d at 1135 (quoting

25   *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir.

26   2004)).  "A substantial burden need not actually force a litigant to change his

27   practices; a violation may occur 'where the state . . . denies [an important benefit]

28   because of conduct mandated by religious belief, thereby putting substantial

20

1    pressure on an adherent to modify his behavior and to violate his beliefs.'" *Walker*,

2    789 F.3d at 1135 (alteration in original) (quoting *Warsoldier v. Woodford*, 418, F.3d

3    989, 995 (9th Cir. 2005)).  If the inmate satisfies his initial burden, then the State

4    must "prove its actions were the least restrictive means of furthering a compelling

5    governmental interest." *Walker*, 789 F.3d at 1134.

6         The SAC alleges that Defendants Riverside County and RCSD have practices

7    that hinder and discourage Plaintiff from practicing his Islamic religion, including

8    denial of Plaintiff's requests for five Islamic religious items (kufi, Islamic prayer

9    rug, Arabic translated Quran, hadith, and sunnah); confiscation of Plaintiff's Islamic

10   reading materials; denial of Plaintiff's requests for congregation services; and denial

11   of Plaintiff's requests to meet with an Islamic advisor.  (SAC, at 7–8.)  The SAC

12   alleges that in totality Defendants Riverside County and RCSD's "system in place"

13   for Muslim detainees places a substantial amount of pressure on Plaintiff and causes

14   him to violate his beliefs in Islam.  (*Id*., at 14.)  These allegations state a RLUIPA

15   claim against Defendants Riverside County and RCSD.

16

17         **G.    Fourteenth Amendment Substantive Due Process**

18         The Due Process Clause of the Fourteenth Amendment of the United States

19   Constitution prohibits the government from depriving "any person of life, liberty, or

20   property without due process of law."  U.S. Const. amend. XIV § 1.  The Due

21   Process Clause "provides heightened protection against government interference

22   with certain fundamental rights and liberty interests." *Washington v. Glucksberg*,

23   521 U.S. 702, 720 (1997).  The touchstone of due process is protection of the

24   individual against arbitrary action of government, whether the fault lies in a denial of

25   fundamental procedural fairness (denial of procedural due process), or in the

26   exercise of power without any reasonable justification in the service of a legitimate

27   governmental objective (denial of substantive due process). *County of Sacramento*

28   *v. Lewis*, 523 U.S. 833, 845–46 (1998).

1    "Pretrial detainees have a substantive due process right against restrictions

2    that amount to punishment." *Valdez*, 302 F.3d 1039, 1045 (9th Cir. 2002).  "For a

3    particular governmental action to constitute punishment, (1) that action must cause

4    the detainee to suffer some harm or 'disability,' and (2) the purpose of the

5    governmental action must be to punish the detainee." *Demery v. Arpaio*, 378 F.3d

6    1020, 1029 (9th Cir. 2004).  In addition, "to constitute punishment, the harm or

7    disability caused by the government's action must either significantly exceed, or be

8    independent of, the inherent discomforts of confinement." *Id.* at 1030.

9    To determine whether a condition is unconstitutional punishment, a court asks

10   "whether there was an express intent to punish, or 'whether an alternative purpose to

11   which [the restriction] may rationally be connected is assignable for it, and whether

12   it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* at

13   1028 (alteration in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)).

14   "[I]f a particular condition or restriction of pretrial detention is reasonably related to

15   a legitimate governmental objective, it does not, without more, amount to

16   '"punishment."'" *Bell*, 441 U.S. at 539. "Conversely, if a restriction or condition is

17   not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court

18   permissibly may infer that the purpose of the governmental action is punishment that

19   may not constitutionally be inflicted upon detainees . . . ." *Id*.  "A reasonable

20   relationship between the governmental interest and the challenged restriction does

21   not require an 'exact fit,' nor does it require showing a 'least restrictive alternative.'"

22   *Valdez*, 302 F.3d at 1046 (citation omitted).

23   The SAC contends that the following conditions of confinement constitute

24   punishment:  (1) confiscation of legal property, (2) forcing detainees to strip naked,

25   (3) excessive force, (4) denial of access to a law library, (5) denial of access to USB

26   flash drives, and (6) denial of access to a phone.  (SAC, at 17.)  Though not

27   explicitly asserted, in light of Plaintiff's *pro se* status, the Court also examines the

28   allegations regarding the conditions in the safety cell.  Plaintiff's Fourteenth

22

1    Amendment substantive due process claims arising from these conditions have the

2    following deficiencies.

3        First, there are no allegations from which it reasonably could be inferred that

4    Defendants RCSD and Riverside County intended to punish Plaintiff.  There can be

5    no Fourteenth Amendment substantive due process violation without sufficient

6    allegations from which it reasonably could be inferred that the purpose of the

7    governmental action is to punish Plaintiff.  *Demery*, 378 F.3d at 1029.  The only

8    allegations in the SAC that potentially could be inferred as intent to punish are

9    statements of individual unnamed deputies, which the SAC asserts were made by

10   Defendants RCSD and Riverside County.  However, as explained in Section IV.C,

11   *supra*, a local government entity cannot be liable under a *respondeat superior*

12   theory.  *Monell*, 436 U.S. at 690–91.  As such, the deputies' statements cannot be

13   imputed to Defendants RCSD and Riverside County.  *Cf. In re Energy Recovery Sec.*

14   *Litig.*, No. 15-cv-00265-EMC, 2016 U.S. Dist. LEXIS 9781, at *73 (N.D. Cal. Jan.

15   27, 2016) (explaining that under *respondeat superior*, an employer may be liable for

16   a statement made by its employee within the scope of employment).

17       Second, pursuant to 42 U.S.C. § 1997e(e) ("Section 1997e(e)"), Plaintiff may

18   not bring a claim for mental or emotional injury suffered while in custody unless he

19   has suffered a "physical injury."  The physical injury must be more than *de minimis*,

20   but need not be significant.  *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).

21   Here, the SAC does not allege any physical injuries arising out of any of the

22   conditions of confinement, other than in connection with Plaintiff's excessive force

23   claim and his allegations regarding the conditions in the safety cell.  As such, only

24   the allegations of excessive force and the conditions in the safety cell satisfy the

25   "physical injury" requirement of Section 1997e(e).  *See* 42 U.S.C. § 1997e(e).

26       Third, Plaintiff's due process claims regarding the confiscation, loss, and/or

27   withholding of his legal documents/materials and USB flash drives fail because

28   neither the negligent nor intentional deprivation of an inmate's property gives rise to

23

a claim under Section 1983 when adequate and meaningful post-deprivation remedies for the losses are available.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  The Ninth Circuit has concluded that California law provides an adequate post-deprivation remedy for any property deprivations caused by public officials. *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–95, the Government Claims Act) (holding that inmate failed to state a claim under Section 1983 for deprivation of property because California law provides an adequate post-deprivation remedy for property deprivations).  Whether Plaintiff succeeds in redressing his or her alleged loss through the available state remedies is immaterial; it is the existence of the alternative remedies that bars him from pursuing a Section 1983 procedural due process claim.  *Willoughby v. Luster*, 717 F. Supp. 1439, 1443 (D. Nev. 1989).  As the only allegations against Defendants Narcisco and Hill are that they confiscated Plaintiff's legal documents (SAC, at 18–21), the SAC does not state any Fourteenth Amendment substantive due process claims against Defendants Narcisco and Hill for this additional reason.

Fourth, specifically as to the excessive force claim against Defendants RCSD and Riverside County, the SAC does not contain sufficient facts from which it reasonably could be inferred that Defendants RCSD and Riverside County have a custom or practice of excessive force in extracting detainees from cells. Furthermore, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, *which policy can be attributed to a municipal policymaker*."  *Collins v. San Diego*, 841 F.2d 337, 341 (9th Cir. 1988) (emphasis in original) (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)).

Fifth, Plaintiff's due process claim for restricted telephone access fails because "[a]lthough prisoners have a First Amendment right to telephone access, this right is subject to reasonable limitations arising from the legitimate penological

and administrative interests of the prison system." *Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000).  Here, the SAC alleges that detainees are allowed one to three hours per day to access the day room, during which time they have access to a telephone.  (SAC, at 40).  Courts have concluded that even less telephone access does not violate the Fourteenth Amendment.  *See, e.g., Osegueda v. Stanislaus Cty. Pub. Safety Ctr.*, No. 1:16-cv-1218-LJO-BAM, 2017 U.S. Dist. LEXIS 55405, at *21–23 (E.D. Cal. Apr. 11, 2017) (concluding that there was no violation of Fourteenth Amendment due process as to telephone access where detainees are allowed three hours per week of yard, during which they have access to a telephone).

Sixth, specifically as to the unsanitary conditions in the safety cell, civil detainees have a constitutional right not to be exposed to unsanitary conditions. *Hydrick v. Hunter*, 500 F.3d 978, 997 (9th Cir. 2007).  However, lack of sanitation must be "severe or prolonged" to violate the Fourteenth Amendment.  *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995).  Here, the SAC alleges that Plaintiff was placed in a safety cell for two days on three occasions—January 18, 2019; January 25, 2019; and February 14, 2019 (SAC, at 28–29)—and that while he was in the safety cell, he "was forced to lay on fecal particles, fresh feces,  urine, and vomit in the safety cells" (*id.*, at 28).  However, the SAC does not allege "that the sanitary limitations imposed upon [Plaintiff] were more than temporary."  *Anderson*, 45 F.3d at 1315.  The SAC does not allege "severe or prolonged" unsanitary conditions rising to the level of a constitutional violation.  *See, e.g., id.* (affirming dismissal of Eighth and Fourteenth Amendment claims regarding unsanitary conditions of safety cells where plaintiff's placement in safety cells was only temporary).

For these reasons, the SAC fails to state a Fourteenth Amendment substantive due process claim for conditions of confinement.  If Plaintiff asserts these claims in an amended complaint, he must correct these deficiencies or risk their dismissal. ///

25

1

### H.   Fourteenth Amendment Right to Privacy

2      "[T]he Fourteenth Amendment protects a sphere of privacy, and the most

3   'basic subject of privacy . . . the naked body.'" *Vazquez v. County of Kern*, 949 F.3d

4   1153, 1165 (9th Cir. 2020) (alteration in original) (quoting *Hydrick v. Hunter*, 500

5   F.3d 978, 1000 (9th Cir. 2007)).  "While the circumstances of institutional life

6   demand that privacy be limited, it is clearly established that gratuitous invasions of

7   privacy violate the Fourteenth Amendment." *Hydrick*, 500 F.3d at 1000, *cert.*

8   *granted, judgment vacated on other grounds*, 556 U.S. 1256 (2009).  However,

9   "casual, restricted, and obscured viewing of a prison inmate's naked body is

10  constitutionally permitted if it is justified by legitimate government interests such as

11  prison security needs." *Ioane v. Hodges*, 939 F.3d 945, 957 (9th Cir. 2019)

12  (discussing *Grummett v. Rushen*, 779 F.2d 491, 492, 494–95 (9th Cir. 1985)).

13      Here, the SAC alleges that Defendants RCSD and Riverside County watched

14  Plaintiff urinate and defecate.  (SAC, at 29.)  These allegations fail to state a

15  Fourteenth Amendment right to privacy claim against such Defendants because, as

16  stated in Section IV.C, *supra*, Defendants RCSD and Riverside County cannot be

17  liable under a *respondeat superior* theory.  *Monell*, 436 U.S. at 690–91.  Rather,

18  Defendants RCSD and Riverside County only can be liable under Section 1983

19  where Plaintiff's injury is inflicted pursuant to "policy, regulation, custom, or

20  usage." *See Chew*, 27 F.3d at 1444.  There are no allegations from which it

21  reasonably could be inferred that Defendants RCSD and Riverside County had a

22  policy or custom of watching detainees use the toilet.

23      For these reasons, the SAC fails to state a Fourteenth Amendment right to

24  privacy claim against Defendants RCSD and Riverside County.  If Plaintiff asserts

25  this claim in an amended complaint, he must correct these deficiencies or risk its

26  dismissal.

27  ///

28  ///

26

## I.     First and Fourteenth Amendment Right to Access to Courts

"[T]he right of access to the courts is a fundamental right protected by the Constitution." *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1061 (9th Cir. 2014) (alteration in original) (quoting *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998)).  Prisoners have a constitutional right of access to the courts, protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Silva v. Di Vittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011).  The right is limited to direct criminal appeals, habeas petitions, and civil rights actions. *Lewis v. Casey*, 518 U.S. 343, 354 (1996).  The right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. . . . [I]t is this capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts. *Id.* at 356–57.

To state a claim for denial of access to the courts, a plaintiff must establish that he or she suffered an "actual injury"—that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis*, 518 U.S. at 348).  "Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be waived." *Nev. Dep't of Corr.*, 648 F.3d at 1018.  Even if delays in providing legal materials or assistance result in actual injury, they are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests." *Lewis*, 518 U.S. at 362.

Claims for denial of access to courts may arise from either the frustration of "a litigating opportunity yet to be gained" (a forward-looking claim), or from "an opportunity already lost" (a backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 414 (2002).  In either case, "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek

27

judicial relief for some wrong." *Id*. at 414–15.  "[T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id*. at 415.  Thus, a plaintiff must allege:  (1) a "nonfrivolous," "arguable" underlying claim, pled "in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued"; (2) the official acts that frustrated the litigation of that underlying claim; and (3) a plain statement describing the "remedy available under the access claim and presently unique to it." *Id*. at 415–18.

To the extent an access-to-court claim is asserted, it fails because the SAC does not sufficiently describe the nonfrivolous legal argument or claim Plaintiff was prevented from asserting as a direct result of Defendants' actions.  Rather, the SAC lists a litany of filings and arguments that Plaintiff allegedly was prevented from filing and asserting, but fails to include any specific facts regarding such claims.  Specifically, as a result of the confiscation of his legal property, Plaintiff asserts that he was prevented from filing a writ of mandate in the California Court of Appeals and a motion for expert witnesses (SAC, at 23), contacting an attorney to represent him and a class of detainees in a class action lawsuit asserting First Amendment and due process violations, and preparing a federal writ of habeas corpus and asserting claims of Brady violations, fabrication of evidence, Faretta right violations, and First Amendment violations (*id*., at 25).  Due to denial of access to the law library, Plaintiff asserts that he was prevented from presenting and asserting claims of fabrication of evidence, willful use of perjury, and law enforcement misconduct, and also was prevented from incorporating legal authorities into a common law dismissal motion and writ for habeas corpus on the grounds of prosecutorial misconduct.  (*Id*., at 37.)  The SAC asserts that when Plaintiff was a pro per in his criminal case from September 1, 2016 to April 2, 2019, he was prevented from making the necessary calls on time to conduct investigations to prepare witnesses, research claims, and overall prepare an effective defense.  (*Id*., at 40.)

However, in order to state an access-to-courts claim, Plaintiff must plead a nonfrivolous, arguable underlying claim, pled in accordance with Rule 8, "just as if it were being independently pursued." *Harbury*, 536 U.S. at 417.  A prisoner's right to access courts does not include the right to present frivolous claims.  *See Lewis*, 518 U.S. at 353 n.3 ("Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value—arguable claims are settled, bought, and sold.  Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.").  The SAC's conclusory allegations, devoid of specific factual allegations regarding the lost underlying claims, are insufficient.

For these reasons, the SAC fails to state a First and Fourteenth Amendment access-to-courts claim.  If Plaintiff asserts this claim in an amended complaint, he must correct these deficiencies or risk its dismissal.

## V.   CONCLUSION

For the reasons stated above, the Court **DISMISSES** the SAC **WITH LEAVE TO AMEND**.  Plaintiff may have another opportunity to amend and cure the deficiencies given his *pro se* status.  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a Third Amended Complaint ("TAC"), or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a TAC.

The TAC must cure the pleading defects discussed above and shall be complete in itself without reference to the SAC.  *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits.  The amended pleading shall not refer to the prior, superseding pleading.").  This means that Plaintiff must allege and plead any viable claims in the TAC again.  Plaintiff shall not include new Defendants or new allegations that are not reasonably related to the claims asserted in the TAC.

1    In any amended complaint, Plaintiff should confine his allegations to those
2 operative facts supporting each of his claims.  Plaintiff is advised that pursuant to
3 Rule 8, all that is required is a "short and plain statement of the claim showing that
4 the pleader is entitled to relief."  **Plaintiff strongly is encouraged to utilize the**
5 **standard civil rights complaint form when filing any amended complaint, a**
6 **copy of which is attached.**  In any amended complaint, Plaintiff should identify the
7 nature of each separate legal claim and make clear what specific factual allegations
8 support each of his separate claims.  Plaintiff strongly is encouraged to keep his
9 statements concise and to omit irrelevant details.  It is not necessary for Plaintiff to
10 cite case law, include legal argument, or attach exhibits at this stage of the litigation.
11 Plaintiff also is advised to omit any claims for which he lacks a sufficient factual
12 basis.

13    **The Court explicitly cautions Plaintiff that failure to timely file a TAC, or**
14 **timely advise the Court that Plaintiff does not intend to file a TAC, will result in**
15 **a recommendation that this action be dismissed for failure to prosecute and/or**
16 **failure to comply with court orders pursuant to Federal Rule of Civil Procedure**
17 **41(b).**

18    Plaintiff is not required to file an amended complaint.  Instead, Plaintiff may
19 request voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure
20 41(a).  A Notice of Dismissal form is attached for Plaintiff's convenience.

21    Plaintiff is advised that this Court's determination herein that the allegations
22 in the Complaint are insufficient to state a particular claim should not be seen as
23 dispositive of the claim.  Accordingly, although the undersigned Magistrate Judge
24 believes Plaintiff has failed to plead sufficient factual matter in the pleading,
25 accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not
26 required to omit any claim or Defendant in order to pursue this action.  However, if
27 Plaintiff decides to pursue a claim in an amended complaint that the undersigned
28 previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the

undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections.  *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

DATED: July 24, 2020

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

<u>Attachments</u>

Plaintiff's Notice of Amendment of Second Amended Complaint

Form Civil Rights Complaint (CV-66)

Form Notice of Dismissal