1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

11   ERIC JEROME PHILLIPS, JR.,          Case No. 5:19-cv-01518-VAP (MAA)

12                 Plaintiff,

13        v.
                                          **MEMORANDUM DECISION AND**
14                                        **ORDER REGARDING THIRD**
     COUNTY OF RIVERSIDE et al.,          **AMENDED COMPLAINT**
15
                 Defendants.
16

17

18   **I.      INTRODUCTION**

19          On August 14, 2019, Plaintiff Eric Jerome Phillips, Jr. ("Plaintiff"), a state

20   inmate proceeding *pro se*, filed a Complaint alleging violations of his civil rights

21   pursuant to  42 U.S.C. § 1983 ("Section 1983").  (Compl., ECF No. 1.)  That same

22   day, Plaintiff also filed a Request to Proceed *In Forma Pauperis* (ECF No. 2), which

23   the Court granted on August 15, 2019 (ECF No. 4).  On August 20, 2019, the Court

24   dismissed the Complaint for failure to comply with Federal Rule of Civil Procedure

25   8 ("Rule 8"), with leave to amend.  (ECF No. 7.)

26          On September 23, 2019, Plaintiff submitted a First Amended Complaint

27   ("FAC").  (FAC, ECF No. 8.)  On November 15, 2019, Plaintiff submitted a Request

28   to Submit Second Amended Complaint ("SAC").  (ECF No. 9.)  The Court denied

this request as unnecessary per Federal Rule of Civil Procedure 15 and ordered Plaintiff to file a SAC no later than December 23, 2019. (ECF No. 10). On December 4, 2019, Plaintiff filed a Motion to Submit Supplemental Complaint (ECF No. 12), which the Court also denied as unnecessary (ECF No. 13). On December 23, 2019, Plaintiff filed a letter to the Clerk of Court requesting the Court's assistance. (ECF No. 14.) On January 9, 2020, the Court issued a notice to the warden and extended Plaintiff's SAC deadline to February 10, 2020. (ECF No. 16.) On February 25, 2020, the Court issued an order requiring Plaintiff to show cause by March 26, 2020 why the Court should not recommend that the case be dismissed for want of prosecution ("OSC"). (OSC, ECF No. 27.) On March 25, 2020, Plaintiff submitted a response to the OSC, stating, *inter alia*, that Plaintiff believed a SAC was optional. (ECF No. 33.) On March 30, 2020, the Court discharged the OSC and deemed the FAC as the operative complaint. (ECF No. 34.) On April 2, 2020, the Court dismissed Plaintiff's FAC (ECF No. 8) for failure to comply with Rule 8, with leave to amend. (ECF No. 35.)

On April 2, 2020, the Court received a complaint, which was docketed as a SAC. (ECF No. 38.) On April 16, 2020, the Court dismissed the SAC with leave to amend. (ECF No. 42.) The Court subsequently received Plaintiff's Motion/Request to Submit a SAC, which stated that Plaintiff had not yet filed a SAC in this lawsuit, and Plaintiff's recent complaint was intended as a separate class action lawsuit. (ECF No. 43.) On April 20, 2020, the Court ordered ECF Nos. 38 and 42 stricken from the docket and ordered Plaintiff to file a SAC no later than June 19, 2020. (ECF No. 44.) On June 8, 2020, Plaintiff filed a SAC (SAC, ECF No. 48), which the Court screened and dismissed with leave to amend on July 24, 2020 ("Order Dismissing SAC") (Order Dismiss. SAC, ECF No. 58).

On August 26, 2020, Plaintiff filed a Third Amended Complaint ("TAC"). (TAC, ECF No. 59.) The Court has screened the TAC as prescribed by 28 U.S.C. § 1915A and § 1915(e)(2)(B). For the reasons stated below, the TAC is

**DISMISSED WITH LEAVE TO AMEND**.  Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a Fourth Amended Complaint ("4AC"); or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a 4AC.

## II.    SUMMARY OF ALLEGATIONS AND CLAIMS[1]

### A.    Defendants

The TAC is filed against:  (1) Riverside County; (2) Riverside County Sheriff's Department ("RCSD"); and (3) Deputy Senior Landry (individual capacity) (each, a "Defendant," and collectively, "Defendants").  (TAC 4.)[2]

### B.    Claims 1–3 - Religious Claims

Claims 1–3 asserts violations of the following rights:  (1) Claim 1: First Amendment Free Exercise Clause; (2) Claim 2: Fourteenth Amendment Equal Protection Clause; and (3) Claim 3: Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (*Id*. at 6.)

Practices and policies throughout Defendant RCSD's jail facilities—which have been in practice since Plaintiff entered Defendant RCSD's custody on July 13, 2016—prohibit Plaintiff from exercising his Islamic religion:  (1) Muslim detainees are not allowed to congregate together, (2) Muslim detainees are not permitted to receive religious materials due to posing a security threat, (3) Muslim detainees must pass a series of tests and inquiries to receive an Arabic Quran, (4) it is not the responsibility of Defendants RCSD and Riverside County to provide congregation

---

[1] The Court summarizes the allegations and claims in the TAC.  In doing so, the Court does not opine on the veracity or merit of Plaintiff's allegations and claims, nor does the Court make any findings of fact.

[2] Pinpoint citations of docketed documents refer to the page numbers in the ECF-generated headers.

services with an Islamic religious advisor, and (5) Muslim detainees may have a phone call with an Islamic religious advisor only once a year.  (*Id*. at 6–7.)

Plaintiff has submitted multiple requests, slips, and grievances, and spoken to multiple deputies regarding his needs to exercise Islam and requesting the following religious items and services:  (1) khuffi, (2) Islamic prayer rug, (3) Arabic Quaran, (4) sunnah, (5) hadith, and (6) the ability to congregate with other Muslims and an Islamic religious advisor in private.  (*Id*. at 7.)  Such requests were denied pursuant to the policies and practices of Defendants Riverside County and RCSD because they either posed a security threat, or due to refusal to provide and allow such requests.  (*Id*. at 8.)  Plaintiff has addressed the foregoing requests with four chaplains employed by Defendants Riverside County and RCSD, who have denied Plaintiff's requests.  (*Id*.)  The chaplains told Plaintiff:  "You should of [sic] chose to be a Christian instead of Muslim"; "Now you know you better not come to jail a Muslim"; "Be grateful we are letting you practice Allah"; and "Muslims are not really accepted here."  (*Id*.)

Defendants Riverside County and RCSD gave Plaintiff a used towel covered in blood, urine, and feces in lieu of a prayer rug to conduct his prayers.  (*Id*. at 9.)  Defendants Riverside County and RCSD forced Plaintiff to read a full page of Arabic Quran, which Plaintiff refused due to feeling harassed.  (*Id*.)  Plaintiff's religious reading materials were confiscated on three occasions, due to Defendants Riverside County and RCSD's policy allowing only one religious book to be in a detainee's possession.  (*Id*. at 9–10.)

Defendants Riverside County and RCSD provide private Christian and Catholic congregation services for detainees who choose to participate approximately one to two times a month.  (*Id*. at 8.)  Defendants Riverside County and RCSD provide Christian and Catholic detainees with religious materials, such as different versions of the Bible and other reading materials, and they are allowed to
///

possess as many religious books as desired.  (*Id*. at 9.)  Jewish detainees are allowed to wear Yarmulkes.  (*Id*.)

In its entirety, Defendants Riverside County and RCSD's policies deny Plaintiff an equal opportunity to pursue his faith as other detainees of different religious faiths, and caused severe psychological injuries to Plaintiff.  (*Id*. at 10, 13.)

### C.    Claim 4 - Fourteenth Amendment Substantive Due Process

During all day room and cell extractions, all detainees are considered highly dangerous and it is the policy and practice that deputies may use as much force as wanted to extract a detainee.  (*Id*. at 15.)  In the "mental health/ad seg unit," deputies will use explosives (tear gas) and however much force wanted on a detainee who does not respond to a question or order fast enough, and will "beat on" mentally unstable detainees.  (*Id*.)

On approximately May 14, 2019, at RPDC Jail[3] in the "mental health/ad seg unit," two classification unit deputies came to Plaintiff's cell and ordered Plaintiff to come out of the cell to be re-housed in the general population.  (*Id*.)  Plaintiff refused the order out of fear for his life and due to exercising a court order.  (*Id*. at 15–16.)  Plaintiff told both deputies that he was in fear for his life and could not function in that environment, and begged them for help.  (*Id*. at 16.)

Both deputies disregarded Plaintiff's statements and concerns and left to summon the "goon squad"—ten to fifteen deputies dressed in all black with riot gear and weapons.  (*Id*.)  Once the "goon squad" arrived, they threw two canisters of military grade tear gas—which emitted tear gas for two minutes each—and three military concussion grenades—two of which exploded in Plaintiff's cell.  (*Id*.)  Approximately ten deputies then entered Plaintiff's cell with a riot shield, shoved the riot shield on top of Plaintiff in a corner of the cell, and punched him repeatedly in

---

[3] Presumably, this refers to Robert Presley Detention Center.

the face for approximately forty-five seconds.  (*Id*.)  They threw Plaintiff to the ground to cuff his hands and feet together as a "hog tie."  (*Id*.)  Plaintiff vomited, urinated and defecated on himself, and lost consciousness due to the explosives and tear gas used on him. (*Id*. at 17.)

The "goon squad" carried Plaintiff into a safety cell by his hands, feet, and clothes.  (*Id*.)  During the transfer, multiple deputies verbally berated Plaintiff.  (*Id*.)  One deputy rapidly pulled on Plaintiff's left distal phalange of his first toe so that it could break.  (*Id*.)  Plaintiff was screaming and asked the deputy to stop.  (*Id*.)  The deputy ignored this request and continued to pull Plaintiff's toe back and verbally berated him.  (*Id*.)  Once Plaintiff was in the safety cell, a sergeant overseeing the event told Plaintiff that next time they would kill him and if he submitted any grievances, they would make sure "you end up dead."  (*Id*.)  Plaintiff remained in the safety cell for approximately two days, where he laid on feces, blood, urine, and spit; and was deprived of sleep the entire time due to excessive lights and freezing cold temperatures.  (*Id*.)  Multiple deputies overseeing Plaintiff humiliated and degraded him about the situation and defecating on himself.  (*Id*. at 18.)  From the safety cell, Plaintiff returned back to the same housing unit—"mental health/ad seg"—where he remained for approximately one year.  (*Id*.)

As a result of the incident, Plaintiff suffered the following physical and psychological injuries:  (1) multiple blood vessels exploded in the left eye, preventing Plaintiff from seeing out such eye for approximately four days; (2) legs and feet were swollen for approximately three months; (3) fractures in left toe; (4) daily self-urination; (5) daily nightmares and sleep deprivation; (6) daily panic attacks; and (7) chains cut into wrists and ankles.  (*Id*.)

Plaintiff made no threats and showed no aggression before or during the assault.  (*Id*.)  Before the incident, Plaintiff received a superior court order to remain housed in the "mental health/ad seg unit" on April 2, 2019.  (*Id*.)  Plaintiff addressed his order and need to stay in the "mental health/ad seg unit" for his safety with two

high-ranking classification unit deputies approximately one-a-half weeks before the assault.  (*Id*. at 19.)  Both deputies told Plaintiff that they did not have to follow the court order.  (*Id*.)  Before the event, Plaintiff submitted multiple grievances and talked with multiple deputies about being housed in ad seg for his safety, but his concerns were disregarded.  (*Id*.)

Defendants RCSD and Riverside County were negligent to Plaintiff's safety and concerns by exercising this custom on Plaintiff and placing him in "reckless endangerment."  (*Id*.)

### D.    Claim 5 - Fourteenth Amendment Rights to Privacy and Bodily Integrity

Defendants RCSD and Riverside County have practices of sexually harassing and assaulting detainees.  (*Id*. at 20.)  As a practice:  (1) deputies sexually harass and humiliate detainees; (2) deputies choose detainees they want to strip naked and sexually degrade; (3) deputies monitor detainees on camera naked and sexually humiliate them; (4) female deputies sexually harass and humiliate male detainees in safety cells; (5) deputies will use as much force as necessary to strip a detainee naked; and (6) deputies will force mentally unstable detainees to strip naked and sexually degrade themselves.  (*Id*. at 20–21.)

While Plaintiff was housed at RPDC Jail, on approximately July 25, 2017, Defendant Landry conducted a random cell search on Plaintiff's cell.  (*Id*. at 21.)  Before he conducted the search, Defendant Landry forced Plaintiff to strip naked and proceeded to sexually assault Plaintiff.  (*Id*.)  Defendant Landry ordered Plaintiff to masturbate in front of him and forced Plaintiff to stick his hands inside his anus, to which Plaintiff complied for fear of his life.  (*Id*.)  For approximately two minutes, Plaintiff was naked and performed Defendant Landry's orders.  (*Id*.)  Defendant Landry laughed at Plaintiff while sexually degrading him.  (*Id*.)  Defendant Landry called Plaintiff "sexy" multiple times and made sexual comments about Plaintiff's

body.  (*Id*.)  Defendant Landry said to Plaintiff that he could have sex with him, and then sexually assaulted Plaintiff.  (*Id*. at 22.)

On approximately January 18, 2019 at CBDC Jail;[4] January 25, 2019 at SCF Jail;[5] and February 19, 2020 at RPDC Jail, Defendants RCSD and Riverside County exercised policies and practices where Plaintiff was forced naked into a safety cell for approximately three days on each occasion.  (*Id*.)  Each time, female and male deputies sexually humiliated and degraded Plaintiff due to his nakedness.  (*Id*.) Deputies made sexual comments to Plaintiff while Plaintiff was using the restroom and eating his food naked.  (*Id*.)

**E.      Request for Relief**

For the foregoing violations, Plaintiff requests:

(1)      Declaratory relief declaring the First and Fourteenth Amendment rights of Plaintiff against Defendant RCSD;

(2)      Permanent injunctions against Defendants Riverside County and RCSD:

      (a)      directing Defendants to provide to Plaintiff:  (i) two hadiths, (ii) two sunnahs, (iii) kufi, (iv) Islamic prayer rug, and (v) Arabic/English Quran;

      (b)      ordering Defendant RCSD to cease:  (i) unnecessary bodily invasions, (ii) sexual harassment, and (iii) forcing detainees to strip naked in safety cells;

(3)      Damages in the following amounts:  (a) $750,000 in punitive, compensatory, and nominal damages from Defendants Riverside

---

[4] Presumably, this refers to the Cois M. Byrd Detention Center.

[5] Presumably, this refers to the Larry Smith Correctional Facility.

County and RCSD; and (b) $250,000 in punitive and compensatory

damages against Defendant Landry;

(4)     A jury trial; and

(5)     Any further relief in the interests of justice.  (*Id*. at 24.)

## III.    STANDARD OF REVIEW

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § Section 1915(e)(2)(B)).  The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is:  (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)).  To survive a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Although "detailed factual allegations" are not required, "an unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to defeat a motion to dismiss. *Id.* (quotations omitted). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). However, the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915. Courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003). In giving liberal interpretations to complaints, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

///

///

///

///

## IV. DISCUSSION

### A. Section 1983

Section 1983 provides a cause of action against "every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id*. To state a claim under Section 1983, a plaintiff must allege: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Here, the TAC asserts violations of the following rights: (1) First Amendment Free Exercise Clause; (2) Fourteenth Amendment Equal Protection Clause; (3) RLUIPA; (4) Fourteenth Amendment substantive due process protection against punishment of pretrial detainees; and (5) Fourteenth Amendment rights to privacy and bodily integrity. (TAC 6, 14.) Mindful of the liberal pleading standards afforded *pro se* civil rights plaintiffs, the Court also examines Claims 4–5 pursuant to the Fourteenth Amendment protection against excessive force and Fourth Amendment right to be free from unreasonable searches. *See Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) ("Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief."); *Ellis v. Brady*, Case No. 16cv1419 WQH (NLS), 2017 U.S. Dist. LEXIS 203458, at *15–16 (S.D. Cal. Dec. 8, 2017) (concluding that court could address plaintiff's claim asserted under the wrong constitutional amendment, as "it is the factual allegations, not the legal labels attached, which determine the issue").

///

11

## B.    Claims Against Municipalities/Local Government Entities

"A municipality or other local government [including counties and their sheriff's departments] may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 692 (1978)). However, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). "A municipality cannot be held liable *solely* because it employs a tortfeasor—or in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 690–91; *accord Connick*, 563 U.S. at 60 ("[U]nder § 1983, local governments are responsible only for their *own* illegal acts. They are not vicariously liable under § 1983 for their employees' actions." (quotations and citations omitted)).

"In order to establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (quoting *Monell*, 436 U.S. at 694). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. A rule or regulation "promulgated, adopted, or ratified by a local governmental entity's legislative body" constitutes a municipal policy. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds by Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc). "A policy has been defined as 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010) (alteration in original) (quoting *Long v. County of Los Angeles*,

442 F.3d 1178, 1185 (9th Cir. 2006)).  "[I]n addition to an official policy, a municipality may be sued for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the [governmental] body's official decisionmaking channels."  *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996) (quotations omitted) (citing *Monell*, 436 U.S. at 690–91).  However, liability for a custom will attach only if a plaintiff pleads that his or her injury resulted from a "permanent and well-settled" practice.  *Thompson*, 885 F.2d at 1444.  Allegations of random acts or isolated events are insufficient to establish a municipal custom.  *Navarro*, 72 F.3d at 714.

Furthermore, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton*, 489 U.S. at 385.  Municipal policy "'causes' an injury where it is the 'moving force' behind the constitutional violation, or where 'the [municipality] itself is the wrongdoer.'"  *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994) (citations omitted).  The municipal policy "need only cause a constitutional violation; it need not be unconstitutional per se."  *Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992).

Below the Court examines whether the TAC successfully states any claims against Defendants Riverside County and RCSD.

**C.      First Amendment Right to Free Exercise of Religion**

The First Amendment prohibits the government from making laws "prohibiting the free exercise" of religion.  U.S. Const. amend. I; *Hartmann*, 707 F.3d at 1122 (noting that the free exercise guarantee is applicable to state action through the Fourteenth Amendment).  "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted).

13

A religious belief must satisfy two criteria to merit protection under the Free Exercise Clause of the First Amendment: (1) "the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity"; and (2) "the claim must be rooted in religious belief, not in purely secular philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (internal quotation marks and citations omitted). In addition, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (alteration in original) (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).

"[A] prisoner's Free Exercise Clause claim will fail if the State shows that the challenged action is 'reasonably related to legitimate penological interests.'" *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Four factors are balanced in determining whether an action is reasonably related to legitimate penological interests:

> (1) whether there is a valid, rational connection between a state interest and the prison regulation; (2) whether prisoners have an alternative method of engaging in religious practice; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates; and (4) the absence of ready alternatives to the challenged regulation.

*Walker*, 789 F.3d at 1138–39 (citing *Turner*, 482 U.S. at 89–90).

Taken as a whole, the TAC sufficiently alleges that Plaintiff holds a sincerely-held belief in the Islamic religion. (*See* TAC 6–13.) The TAC alleges

14

that since July 13, 2016, Defendants Riverside County and RCSD have practices
that hinder and discourage Plaintiff from practicing his Islamic religion— including
repeated denials of Plaintiff's requests for five Islamic religious items (kufi, Islamic
prayer rug, Arabic translated Quran, hadith, and sunnah), confiscation of Plaintiff's
Islamic reading materials, denial of Plaintiff's numerous requests for congregation
services, and denial of Plaintiff's requests to meet with an Islamic advisor—all due
to Defendants RCSD and Riverside County's stance that the Islamic religion poses
a security threat. (*Id*. at 6–10.) The TAC alleges that these denials prevent Plaintiff
from performing his "fundamental obligations" under Islam. (*Id*. at 12.) These
allegations potentially state a First Amendment free exercise claim against
Defendants RCSD and Riverside County.

### D. Fourteenth Amendment Right to Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment provides that
'[n]o State shall . . . deny to any person within its jurisdiction the equal protection of
the laws.'" *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015)
(alteration in original) (quoting U.S. Const. amend. XIV, § 1). "The Equal
Protection Clause requires the State to treat all similarly situated people equally."
*Hartmann*, 707 F.3d at 1123. "The Equal Protection Clause does not forbid
classifications. It simply keeps governmental decisionmakers from treating
differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505
U.S. 1, 10 (1992).

"The Constitution's equal protection guarantee ensures that prison officials
cannot discriminate against particular religions." *Freeman v. Arpaio*, 125 F.3d 732,
737 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878,
884–85 (9th Cir. 2008). "[T]he Equal Protection Clause entitles each prisoner to 'a
reasonable opportunity of pursuing his faith comparable to the opportunity afforded
///

15

fellow prisoners who adhere to conventional religious precepts.'" *Shakur*, 514 F.3d at 891 (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)).

A plaintiff states an equal protection claim by alleging "facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class." *Hartmann*, 707 F.3d at 1123 (alteration in original) (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)). "To succeed on an equal protection claim, a plaintiff in a section 1983 claim must show that officials intentionally acted in a discriminatory manner." *Freeman*, 125 F.3d at 737. As with First Amendment free exercise claims, courts apply the *Turner* four-factor reasonableness test—that is, Plaintiff's Fourteenth Amendment equal protection claim will fail if the challenged action is reasonably related to legitimate penological interests. *See Shakur*, 514 F.3d at 891.

The TAC alleges that Defendants Riverside County and RCSD have practices that hinder and discourage Plaintiff from practicing his Islamic religion, including denial of Plaintiff's requests for five Islamic religious items (kufi, Islamic prayer rug, Arabic translated Quran, hadith, and sunnah); confiscation of Plaintiff's Islamic reading materials; denial of Plaintiff's requests for congregation services; and denial of Plaintiff's requests to meet with an Islamic advisor. (TAC 6–10.) The TAC alleges that in contrast to Muslim detainees, Christian and Catholic detainees receive religious and advisor congregation services approximately one to two times per month, are provided the Bible and other religious reading materials, and are permitted to possess as many religious books as desired. (*Id*. at 8–9.) The TAC also alleges that Jewish detainees are permitted to wear Yarmulkes and are allowed to possess as many religious books as desired. (*Id*. at 9.) The TAC asserts that in its entirety, Defendants Riverside County and RCSD's policies deny Plaintiff an equal opportunity to pursue his faith as other detainees of different religious faiths. (*Id*. at 10.) These allegations potentially state a Fourteenth Amendment equal protection claim against Defendants RCSD and Riverside County.

16

## E.    RLUIPA

"RLUIPA . . . protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA provides that: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person,' first, 'furthers a compelling governmental interest,' and second, 'is the least restrictive means of furthering that compelling governmental interest.'" *Id*. at 732 (alteration in original) (quoting 42 U.S.C. § 2000cc-1(a)(1)–(2)). RLUIPA provides more "expansive protection" for inmates' "religious liberty" than the First Amendment. *Holt v. Hobbs*, 574 U.S. 352, 358 (2015); *Shakur*, 514 F.3d at 888 (RLUIPA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under *Turner*.").

"To state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a religious exercise, and (2) the State's actions have substantially burdened that exercise." *Walker*, 789 F.3d at 1134 (internal quotations omitted). "RLUIPA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief, but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt*, 574 U.S. at 360–61 (internal quotations and citations omitted). "To constitute a substantial burden, a limitation of religious practice 'must impose a significantly great restriction or onus upon such exercise.'" *Walker*, 789 F.3d at 1135 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden need not actually force a litigant to change his practices; a violation may occur 'where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial

pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.*
(alteration in original) (quoting *Warsoldier v. Woodford*, 418, F.3d 989, 995 (9th
Cir. 2005)). If the inmate satisfies his initial burden, then the State must "prove its
actions were the least restrictive means of furthering a compelling governmental
interest." *Id.* at 1134.

The TAC alleges that since July 13, 2016, Defendants Riverside County and
RCSD have practices that hinder and discourage Plaintiff from practicing his Islamic
religion— including repeated denials of Plaintiff's requests for five Islamic religious
items (kufi, Islamic prayer rug, Arabic translated Quran, hadith, and sunnah),
confiscation of Plaintiff's Islamic reading materials, denial of Plaintiff's numerous
requests for congregation services, and denial of Plaintiff's requests to meet with an
Islamic advisor—all due to Defendants RCSD and Riverside County's position that
the Islamic religion poses a security threat. (*Id*. at 6–10.) These allegations
potentially state a RLUIPA claim against Defendants Riverside County and RCSD.

### F.    Fourteenth Amendment Protection Against Punishment

Pretrial detainees possess greater constitutional rights than prisoners. *Stone v.
City & County of San Francisco*, 968 F.2d 850, 857 n.10 (9th Cir. 1992); *see also
Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("Eighth
Amendment protections apply only once a prisoner has been convicted of a crime,
while pretrial detainees are entitled to the potentially more expansive protections of
the Due Process Clause of the Fourteenth Amendment." ). The Due Process Clause
of the Fourteenth Amendment protects pretrial detainees—who have not been
adjudged guilty of any crime—from any conditions or restrictions that amount to
punishment. *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); *see also Valdez v.
Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) ("Pretrial detainees have
a substantive due process right against restrictions that amount to punishment.").
///

"This right is violated if restrictions are 'imposed for the purpose of punishment.'" *Valdez*, 302 F.3d at 1045 (quoting *Bell*, 441 U.S. at 535).

For a particular governmental action to constitute punishment, <u>first</u> the "action must cause the detainee to suffer some harm or 'disability.'" *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004). "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id.* at 1030. <u>Second</u>, "the purpose of the governmental action must be to punish the detainee." *Id.* at 1029. To determine whether a condition is unconstitutional punishment, a court asks "whether there was an express intent to punish, or 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* at 1028 (alteration in original) (quoting *Bell*, 441 U.S. at 538). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to '"punishment."'" *Bell*, 441 U.S. at 539. "Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees . . . ." *Id.* "A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a least restrictive alternative." *Valdez*, 302 F.3d at 1046 (internal quotation marks and citations omitted).

The TAC alleges that on July 25, 2017, Defendant Landry conducted a random cell search of Plaintiff's cell, during which Defendant Landry forced Plaintiff to strip naked, forced Plaintiff to perform his orders—including to masturbate and to stick his hands inside his anus—called Plaintiff "sexy" multiple times, made sexual comments about Plaintiff's body, and sexually assaulted Plaintiff. (TAC 21–22.) The TAC does not provide sufficient details of Defendant

Landry's actions, including in particular his "sexual assault" of Plaintiff.  It is unclear whether Plaintiff alleges that Defendant Landry physical assaulted him or whether he is characterizing Defendant Landry's verbal abuse as "sexual assault." "[V]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *see also, e.g., Hill v. Chilmegan*, No. CV 17-01674-PHX-GMS (DKD), 2017 U.S. Dist. LEXIS 209199, at *7 (D. Ariz. Dec. 19, 2017) (dismissing pretrial detainee's Fourteenth Amendment punishments claim based solely on allegations of inappropriate sexual comments where plaintiff did not allege any physical contact).  If Plaintiff includes Defendant Landry in any amended complaint, he must provide additional factual allegations regarding Defendant Landry's actions, including any actions taken beyond verbal harassment.

With respect to Defendants RCSD and Riverside County, the TAC alleges that Defendants have a policy and practice of allowing deputies to use as much force as wanted to extract a detainee.  (TAC 15.)  The TAC also alleges that Defendants RCSD and Riverside County have the following customs, policies, and practices: (1) deputies sexually harass and humiliate detainees; (2) deputies choose the detainees they want to strip naked and sexually degrade; (3) deputies monitor detainees on camera naked and sexually humiliate them; (4) female deputies sexually harass and humiliate male detainees in safety cells; (5) deputies will use as much force as necessary to strip a detainee naked; and (6) deputies will force mentally unstable detainees to strip naked and sexually degrade themselves.  (*Id*. at 20–21.)

These allegations fail to state a Fourteenth Amendment punishments claim against Defendants RCSD and Riverside County because such Defendants cannot be liable for the actions of their employees under a *respondeat superior* theory. *Monell*, 436 U.S. at 690–91.  Rather, Defendants RCSD and Riverside County can only be liable where Plaintiff's alleged constitutional deprivations were caused by

such Defendants' policy, custom, or practice. *Chew*, 27 F.3d at 1444. The Court details the requirements to plead a policy, custom, or practice claim against local government entities such as Defendants RCSD and Riverside County in Section IV.B, *supra*. However, other than the conclusory use of the words "custom," "policy" or "practice," there are no factual allegations that support the existence of a policy, custom, or practice. *See Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011) (affirming dismissal where complaint "lacked any factual allegations . . . demonstrating that [the] constitutional deprivation was the result of a custom or practice . . . or that the custom or practice was the 'moving force' behind [the] constitutional deprivation"). Rather, the TAC appears to allege discrete acts of deputies, and attempts to attribute them to Defendants Riverside County and RCSD, which is not permitted.

For these reasons, the TAC does not state a Fourteenth Amendment punishments claim. If Plaintiff asserts a Fourteenth Amendment punishments claim in any amended complaint, he must correct these deficiencies or risk its dismissal.

### G.     Fourteenth Amendment Protection From Excessive Force

The Fourteenth Amendment's Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). To prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "[I]t does not matter whether the defendant understood that the force used was excessive, or intended it to be excessive, because the standard is purely objective." *Castro*, 833 F.3d at 1069 (discussing *Kingsley*).

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 135 S. Ct. at 2473 (quoting *Graham*, 490 U.S. at 396). "A court must make this determination from the perspective of a reasonable officer

on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  *Id*.  "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'"  *Id.* (alterations in original) (quoting *Bell*, 441 U.S. at 540).  The following non-exclusive factors may bear on the reasonableness or unreasonableness of the force used:  "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Id*.

The TAC alleges that Defendants Riverside County and RCSD have a policy and practice of allowing deputies to use as much force as desired to strip a detainee naked and extract a detainee from a cell, and specifically details an incident of alleged excessive force on May 14, 2019.  (TAC 15.)  Defendants Riverside County and RCSD cannot be vicariously liable for the acts of their employees, but instead can only be liable if Plaintiff's injury is caused by their policy or custom.  *See Castro*, 833 F.3d at 1073; *see also supra* Section IV.B (discussing the requirements to plead a Section 1983 claim against local government entities).  The conclusory statement that Defendants Riverside County and RCSD have a policy and practice is not sufficient to plead a policy and practice.  *See Iqbal*, 556 U.S. at 678 (explaining that "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim).  Furthermore, the Court previously advised Plaintiff that a single incident is not sufficient to impose liability to a municipal entity such as Defendants Riverside County and RCSD.  (*See* Order Dismiss. SAC 24.)  Thus, the TAC does not state a

1  Fourteenth Amendment excessive force claim against Defendants Riverside County
2  and RCSD.

3          Nonetheless, Plaintiff potentially could state a Fourteenth Amendment
4  excessive force claim against the officers involved in the May 14, 2019 incident, in
5  their individual capacities.  If Plaintiff would like to do so, he should name the
6  specific individuals involved in the May 14, 2019 incident, and allege the specific
7  actions taken by each such individual.  If Plaintiff does not know the officers'
8  names, he may designate them as numbered Doe Defendants—*i.e.*, Doe Defendant
9  1, Doe Defendant 2, etc.—until their identity is discovered.

10         For these reasons, the TAC fails to state a Fourteenth Amendment excessive
11 force claim.  If Plaintiff asserts a Fourteenth Amendment excessive force claim in an
12 amended complaint, he must correct these deficiencies or risk its dismissal.

13

14         **H.    Fourteenth Amendment Right to Bodily Integrity**

15          "Most cases that involve unwanted sexual contact or harassment by public
16 officials have been analyzed under the substantive due process right to be free from
17 violations of bodily integrity under the Fourteenth Amendment."  *Vazquez v. County*
18 *of Kern*, 949 F.3d 1153, 1162 (9th Cir. 2020) (quoting *Fontana*, 262 F.3d at 881–82
19 n.6).  Under the Fourteenth Amendment's substantive due process prong, allegations
20 must "shock the conscience."  *Id.*  "The threshold question is 'whether the behavior
21 of the governmental officer is so egregious, so outrageous, that it may fairly be said
22 to shock the contemporary conscience.'"  *Id.* (quoting *County of Sacramento v.*
23 *Lewis*, 523 U.S. 833, 848 n.8 (1998)).  Specifically, a sexual assault on an inmate by
24 a guard "is deeply offensive to human dignity" and "is simply not part of the penalty
25 that criminal offenders pay for their offenses against society."  *Schwenk v. Hartford*,
26 204 F.3d 1187, 1197 (9th Cir. 2000) (quotations omitted) (quoting *Farmer v.*
27 *Brennan*, 511 U.S. 825, 834 (1994)).
28 ///

23

Here, the TAC alleges that on July 25, 2017, Defendant Landry conducted a random cell search of Plaintiff's cell, during which Defendant Landry forced Plaintiff to strip naked, forced Plaintiff to perform his orders—including to masturbate and to stick his hands inside his anus—called Plaintiff "sexy" multiple times, made sexual comments about Plaintiff's body and Defendant Landry's desire to have sex with Plaintiff, and sexually assaulted Plaintiff. (TAC 21–22.) The TAC does not detail Defendant Landry's "sexual assault" of Plaintiff and it is unclear whether Plaintiff alleges that Defendant Landry raped or otherwise physically assaulted Plaintiff. (*See id.*) As explained in Section IV.F, *supra*, verbal harassment or abuse is not sufficient to state a Section 1983 claim. If Plaintiff includes Defendant Landry in any amended complaint, he must provide additional factual allegations regarding Defendant Landry's actions, including any actions taken beyond verbal abuse.

With respect to Defendants Riverside County and RCSD, the TAC alleges that such Defendants have the "practice" of deputies sexually harassing and humiliating detainees, stripping detainees naked and degrading them, monitoring detainees on camera naked and humiliating them, and sexually harassing detainees in safety cells. (TAC 20.) However, Defendants Riverside County and RCSD cannot be vicariously liable for their deputies' actions, *see Monell*, 436 U.S. at 690–91, and these allegations are not sufficient to plead the existence of a custom or policy. *See Iqbal*, 556 U.S. at 678; *see also supra* Section IV.B (detailing the requirements to allege a policy, custom, or practice). Moreover, even if the allegations of sexual harassment and humiliation were sufficient to plead the existence of a custom or policy—which they do not—they do rise to the level of shocking the conscience.

For these reasons, the TAC does not state a Fourteenth Amendment bodily integrity claim. If Plaintiff asserts a Fourteenth Amendment bodily integrity claim in any amended complaint, he must correct these deficiencies or risk its dismissal.

### I. Fourteenth Amendment Right to Bodily Privacy

"[T]he Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy . . . the naked body.'" *Vazquez*, 949 F.3d at 1165 (alteration in original) (quoting *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007)). "[P]risoners retain a limited right to bodily privacy," and pretrial detainees have "at least the same right to bodily privacy as a prisoner." *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017) (citations omitted). "[C]asual, restricted, and obscured viewing of a prison inmate's naked body is constitutionally permitted if it is justified by legitimate government interests such as prison security needs." *Ioane v. Hodges*, 939 F.3d 945, 957 (9th Cir. 2019) (discussing *Grummett v. Rushen*, 779 F.2d 491, 492, 494–95 (9th Cir. 1985)); *see also Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (holding that right to bodily privacy was not violated because female officers did not "regularly or frequently observe unclothed inmates without a legitimate reason for doing so"; specifically, (1) female guards observing male prisoner body cavity searches from a control booth that provided limited view of the searches was reasonable because the female guards were "not routinely present for strip searches" and observation from video monitors "would provide at most an indistinct, limited view" and (2) female guards conducting male prisoner shower duty was reasonable where evidence did not establish an inappropriate amount of contact with disrobed prisoners). Conversely, the right to bodily privacy may be violated if, for example, the viewing of an inmate's naked body while showering and/or using the toilet is "frequent[]" and "up close" or "neither obscured nor distant." *Maricopa Cnty. Bd. of Supervisors*, 845 F.3d at 922–24.

Here, the TAC alleges that Defendants Riverside County and RCSD have the following practices: (1) deputies choose the detainees they want to strip naked and sexually degrade; (2) deputies monitor detainees on camera naked and sexually humiliate them; (3) female deputies sexually harass and humiliate male detainees in

safety cells; (4) deputies will use as much force as necessary to strip a detainee naked; and (5) deputies will force mentally unstable detainees to strip naked and sexually degrade themselves. (TAC 20–21.) The TAC also alleges that on approximately January 18, 2019 at CBDC Jail; January 25, 2019 at SCF Jail; and February 19, 2020 at RPDC Jail, Defendants RCSD and Riverside County exercised policies and practices where Plaintiff was forced naked into a safety cell for approximately three days on each occasion. (*Id*. at 22.) Each time, female and male deputies sexually humiliated and degraded Plaintiff due to his nakedness, and deputies made sexual comments to Plaintiff while Plaintiff was using the restroom and eating his food naked. (*Id*.)

These allegations fail to state a Fourteenth Amendment bodily privacy claim against Defendants Riverside County and RCSD for the following reasons. <u>First</u>, Defendants Riverside County and RCSD cannot be vicariously liable for their employees' acts. *See Monell*, 436 U.S. at 690–91. If Plaintiff wishes to assert a Fourteenth Amendment bodily privacy claim against any of the deputies—for example, the deputies who viewed his naked body while he was using the restroom, or the deputies who monitored Plaintiff's naked body—he should name the specific deputies and allege the specific acts by each individual deputy. If Plaintiff does not know the officers' names, he may designate them as numbered Doe Defendants— *i.e*., Doe Defendant 1, Doe Defendant 2, etc.—until their identity is discovered. <u>Second</u>, the TAC does not sufficiently allege that these actions were the result of policies or practices, and therefore can be attributed to Defendants Riverside County and RCSD. *See Connick*, 563 U.S. at 61 ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."); *see also supra* Section IV.B (detailing the requirements to state a claim against local government entities such as Defendants Riverside County and RCSD). <u>Third</u>, even if the TAC properly asserted a policy, custom, or practice, the TAC does not contain

sufficient detail to demonstrate that the viewing of detainees' and Plaintiff's naked body was "frequent," "up close" and "neither obscured nor distant," and therefore potentially violated the Fourteenth Amendment. *See Maricopa Cnty. Bd. of Supervisors*, 845 F.3d at 922–24. If the viewing of Plaintiff's naked body was "casual," "restricted," or "obscured," it would not violate the Fourteenth Amendment if it is justified by legitimate government interests such as prison security needs. *See Ioane*, 939 F.3d at 957.

For these reasons, the TAC fails to state a Fourteenth Amendment bodily privacy claim. If Plaintiff asserts a Fourteenth Amendment bodily privacy claim in any amended complaint, he must correct these deficiencies or risk its dismissal.

## J.    Fourth Amendment Protection Against Unreasonable Searches

The Fourth Amendment guarantees "the right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "Whether a search is reasonable under the Fourth Amendment requires a case-by-case 'balancing of the need for the particular search against the invasion of personal rights that the search entails . . . .'" *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011) (quoting *Bell*, 441 U.S. at 559). "The required factors for courts to consider include: (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." *Id.* (internal quotation marks omitted).

The Supreme Court has stated that "[m]aintaining safety and order" at detention centers "requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 326 (2012). Thus, "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities," and such a policy "must be upheld 'if it is reasonably related to legitimate penological interests.'" *Id.*

at 326, 328 (quoting *Turner*, 482 U.S. at 89). Specifically with respect to strip searches of pretrial detainees, the Supreme Court has held that "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to [legitimate security interests] courts should ordinarily defer to their expert judgment in such matters." *Id.* at 328 (quoting *Block v. Rutherford*, 468 U.S. 576, 584–85 (1982)). However, the Ninth Circuit has concluded that deference to jail officials is unwarranted where search methods are unreasonable. *See Shorter v. Baca*, 895 F.3d 1176, 1189 (9th Cir. 2018) (concluding that search procedures— which required mentally ill inmates to be shackled and unclothed, without food, water, or access to a toilet for hours at a time—were not entitled to deference). The Ninth Circuit also has held that strip search procedures that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may violate the Fourth Amendment. *Michenfelder*, 860 F.2d at 332; *see also Maricopa Cnty. Sheriff's Dep't*, 629 F.3d at 1142 (holding that a cross-gender strip search was unreasonable as a matter of law where there was no emergency and female officer touched pretrial detainee's inner and outer thighs, buttocks, and genitals).

Here, the TAC alleges that Defendants RCSD and Riverside County have the practice of allowing deputies to do strip searches on pretrial detainees, that deputies will use as much force as necessary to strip search detainees, and that deputies will "sexually degrade" detainees during the strip searches. (TAC 20–21.) These allegations fail to state a Fourth Amendment claim against Defendants RCSD and Riverside County because there are no allegations by which the deputies' actions can be attributed to Defendants RCSD and Riverside County's policies and practices. *See Connick*, 563 U.S. at 61 ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."). Further, even if the TAC had sufficiently pled a policy or practice, the allegations of the strip procedures are scant and do not lead to the reasonable inference that they were either

an exaggerated response to legitimate security needs, *Florence*, 566 U.S. at 328, or "excessive, vindictive, harassing, or unrelated to any legitimate penological interest," *Michenfelder*, 860 F.2d at 332, and therefore violate the Fourth Amendment.

For these reasons, the TAC fails to state a Fourth Amendment unreasonable search claim. If Plaintiff asserts a Fourth Amendment unreasonable search claim in any amended complaint, he must correct these deficiencies or risk its dismissal.

## V.    CONCLUSION

For the reasons stated above, the Court **DISMISSES** the TAC **WITH LEAVE TO AMEND**. Plaintiff may have another opportunity to amend and cure the deficiencies given his *pro se* status. Plaintiff is **ORDERED** to, within thirty days after the date of this Order, either: (1) file a 4AC, or (2) advise the Court that Plaintiff does not intend to pursue this lawsuit further and will not file a 4AC.

The 4AC must cure the pleading defects discussed above and shall be complete in itself without reference to the TAC. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the 4AC again. Plaintiff shall not include new Defendants or new allegations that are not reasonably related to the claims asserted in the TAC. **If Plaintiff would like the Court to order the 4AC to be served, Plaintiff may choose to limit the 4AC to the allegations and claims the Court has concluded are adequately stated (Plaintiff's religion claims in Claims 1–3).**

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the**

**standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**  In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims.  **Plaintiff should clearly specify which claims are being asserted against which specific Defendant.**  Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details.  It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation.  Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court explicitly cautions Plaintiff that failure to timely file a 4AC, or timely advise the Court that Plaintiff does not intend to file a 4AC, will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint.  Instead, Plaintiff may request voluntary dismissal of the action pursuant to Federal Rule of Civil Procedure 41(a).  A Notice of Dismissal form is attached for Plaintiff's convenience.

Plaintiff is advised that this Court's determination herein that the allegations in the TAC are insufficient to state a particular claim should not be seen as dispositive of the claim.  Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action.  However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned previously found to be insufficient, then pursuant to 28 U.S.C. § 636, the undersigned ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject
///

to Plaintiff's right at that time to file objections.  *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.


DATED: October 22, 2020                    _____
                                                          MARIA A. AUDERO
                                           UNITED STATES MAGISTRATE JUDGE


Attachments

Form Civil Rights Complaint (CV-66)

Form Notice of Dismissal